## Case No. 14,396.

UNION PAPER COLLAR CO. v. WHITE.

[2 Ban. & A. 60; 32 Leg. Int. 143; 7 O. G. 698, 877; Merw. Pat. Inv. 351; 11 Phila. 479; 1 Wkly. Notes Cas. 362; 21 Int. Rev. Rec. 142; 22 Pittsb. Leg. J. 155.] [1]

Circuit Court, E. D. Pennsylvania.　April 3, 1875.

PATENTS—REISSUE—TEST OF VALIDITY—PAPER COLLARS.

1. Where a new article of manufacture is produced, by giving a new form to an old substance, and by suitable manipulation making its peculiar properties available for a use to which they had not before been applied, thereby distinguishing it from all others of the class to which it belongs, and giving to it great practical benefits, such production would possess special patentable merits.

2. Although a patent has been reissued several times, still the law presumes that the last reissue was granted to correct an inadvertent omission in the original, because it commits to the commissioner of patents the conclusive determination of the question.

3. The only test of the validity of the action of the commissioner in granting the reissue, is whether he has allowed it for a different invention

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission. Merw. Pat. Inv. 351, and 1 Wkly. Notes Cas. 362, contain only partial reports.]

from that covered by the original patent, or for what was not therein described, claimed, or indicated.

4. The first claim of letters patent reissue No. 5,109, granted Walter Hunt, October 22, 1872, which is for "a shirt collar composed of paper and muslin, or its equivalent, so united that the muslin will counteract the fragile character of the paper," does not claim the article of manufacture in broader terms than those in which it was described, or at least clearly indicated, in the original patent.

5. The said claim construed to be for "a shirt collar composed of paper and muslin, or its equivalent, united by paste, glue, or other appropriate sizing, by means of which union the fragility of the paper is re-enforced by the fibrous strength of the muslin, and the necessary cohesiveness of the fabric is thus secured."

6. The claim is not open to the objection that it is for an abstract result, and therefore, void. It is not for the mere result of a union of paper and muslin in a shirt collar, independent of the corporeal substance which embodies it; but it is for a thing fabricated in a given form, for a specific purpose, and out of materials so united that the combined fabric is impressed with the peculiar qualities which belong to each of its constituents.

7. The said claim covers a fabric made of paper and muslin for making collars, where its constituents are incorporated with each other, so that the textile strength of the one is made available to re-enforce the fragility of the other.

[Cited in Cochran v. Wilson, 41 Fed. 222.]

8. The original patent, No. 11,376, July 25, 1854, described a standing collar with paper on both sides of the cloth, but the invention and claim are broad enough to include a collar with paper on one side only, even though the collar is turned over so as to expose the cloth surface only in view.

9. The patent is not infringed by collars of paper with a simple cloth re-enforcement at the button-holes.

10. Characteristic resemblance is the fairest test of substantial identity.

[This was a bill in equity by the Union Paper Collar Company against Henry J. White, to restrain the infringement of reissued letters patent No. 5,109, granted October 22, 1872, and assigned to complainants.]

George Harding, for complainants.

J. J. Coombs and E. Wetmore, for defendant.

McKENNAN, Circuit Judge. The complainants are the owners by several mesne assignments of a patent [No. 11,376] granted to Walter Hunt on the 25th of July, 1854, for a new article of manufacture consisting of a collar made out of paper and muslin, so combined, formed, and manipulated as to adapt it to use as such. This patent was duly extended for seven years from the date of its expiration, and was reissued on the 22d of October, 1872, No. 5,109. The validity and infringement of this reissued patent are the subjects of this contention.

I do not think that the legal presumption, that Hunt was the first and original inventor of the article of manufacture for which he obtained a patent, is at all shaken by the proofs in the cause. It is true that paper and muslin, or linen cloth, were be-

fore united, and used as a fabric for maps, etc., but this was not analogous to the use to which Hunt adapted them, nor was it in anywise suggestive of his invention. He was the first to discover the adaptability of this material to a use not cognate to any to which it had before been applied, and, by appropriate manipulation, to give it a useful and practical form. He, thus, not only supplied the public with a new article of manufacture, but he demonstrated unknown susceptibilities of the material, out of which it was made. This is something more than the mere application of an old thing to a new purpose. It is the production of a new device by giving a new form to an old substance, and, by suitable manipulation, making its peculiar properties available for a use to which it had not before been applied, thereby distinguishing it from all other fabrics of the class to which it belongs. This seems to me to involve an exercise of an inventive faculty, and, in view of the great practical benefits resulting from it, to invest the product with special patentable merit. The patent in controversy is the seventh reissue of Hunt's original patent. This multiplication of reissues is, of itself, suggestive of a purpose to cover intervening improvements, and some phrases in the specification of the last reissue may, not without semblance of reason, be treated as having that significance.

It is difficult to suppose that so many reissues with considerable intervals of time between them were necessary to correct accidental or inadvertent mistakes in the specification and claims of the original patent. And yet the correction of these is the only legitimate purpose of a reissue. This practice has been strongly disapproved of by the supreme court on more than one occasion.

In Carlton v. Bokee, 17 Wall. [84 U. S.] 471, Mr. Justice Bradley remarks: "We think it proper to reiterate our disapprobation of these ingenious attempts to expand a simple invention of a distinct device into an all-embracing claim, calculated by its wide generalizations and ambiguous language to discourage further invention in the same department of industry and to cover antecedent inventions."

Whatever reason there may be to suspect that the motive of the patentee was to give undue elasticity to his patent, still the law presumes that the reissue was granted to correct an inadvertent omission in the original, because it commits to the commissioner of patents the conclusive determination of that question, and the only test of the validity of his action is whether he has allowed a reissue for a different invention from that covered by the original patent, or for what was not therein described, claimed, or indicated.

The claim in the reissue which, it is urged, avoids it, is as follows:

"A shirt collar composed of paper and muslin, or its equivalent, so united that the muslin will counteract the fragile character of the paper."

Construing this in connection with the specification, its obvious import is that the patentee sought to secure as his invention a shirt collar composed of paper and muslin or its equivalent, united by paste, glue, or other appropriate sizing, by means of which union the fragility of the paper is re-enforced by the fibrous strength of the muslin, and the necessary cohesiveness of the fabric thus secured.

Now, is not this described, or at least clearly indicated, in the original patent? In that patent the nature and distinguishing qualities of the invention are thus stated: "Attempts have been made at various times to manufacture shirt collars of paper; but they have never been extensively introduced, nor has anything lasting or beneficial resulted therefrom, on account of the fragile nature of the material, which rendered it liable to be easily broken and defaced; while it was liable to be quickly soiled and entirely destroyed if exposed to either rain or perspiration. The object of my present invention is to produce a shirt collar that shall not easily be broken, while it shall have sufficient elasticity to bend to the motions of the head; that shall possess the beauty and whiteness of the most carefully dressed linen collar, and at the same time shall preserve itself unsoiled for a much greater length of time, and shall cost originally less than the washing and dressing of a linen collar; and my invention consists in making the collars of a fabric composed of both paper and cloth, and in subsequently polishing the same by enamelling or burnishing, or in suitable and efficient manner."

This statement distinctly identifies the subject of the first claim of the reissued patent. The invention to which it refers is said to be a shirt collar consisting of paper and muslin, the qualities of which are cheapness of cost, smoothness of surface, flexibility, cohesiveness, and impermeability to moisture. It is not expressly declared that muslin is combined with paper to "counteract the fragile character of the material out of which they are made." This infirmity the inventor proposes to cure by the addition of a textile material, which obviously has no other function or object; and in describing the mode of carrying his invention into effect, he directs how the paper and muslin are to be combined to secure for the fabric the necessary and desired qualities. Clearly this distinctly indicates, and is broad enough to cover, "a shirt collar composed of paper and muslin, so united that the muslin will counteract the fragile character of the paper."

But it is urged that the contested claim is merely for an abstract result, and is, therefore, void. Certainly it is the settled law that a mere principle, or result, or mode of

operation is not patentable. So therefore, in O'Reilly v. Morse, 15 How. [56 U. S.] 62, the eighth claim of Morse's patent was adjudged to be void because it sought to appropriate the use of electro-magnetism for marking or printing characters at a distance independently of the means by which this natural agency was thus utilized, and in Burr v. Duryee, 1 Wall. [68 U. S.] 531, it was held that a mode of operation, irrespective of mechanism by which it was effected, would not be patentable.

Is the claim in this patent obnoxious to this objection? In one sense it is for a result, but only in the sense in which any fabric or device is the result of the means employed to produce it. It is not for the mere result of a union of paper and muslin in a shirt collar, independent of the corporeal substance which embodies it, but it is for a thing fabricated in a given form, for a specific purpose, and out of materials so united that the combined fabric is impressed with the peculiar qualities which belong to each of its constituents. A collar made of these materials in mere juxtaposition is not within range of the patentee's conception; but when they are incorporated so as to constitute substantially a single fabric, and are used for the purpose for which he was the first to discover their adaptability, it is an invasion of his right.

The claim is not, then, for the mere effect resulting from a union of paper and muslin, nor for the fabric thus produced, nor for the special mode of preparing it; but it covers the use of it for making collars where its constituents are incorporated with each other, so that the textile strength of the one is made available to re-enforce the fragility of the other. And such original application of it, to the production of a most useful article, the inventor can lawfully claim to appropriate.

Does the defendant infringe this patent? Hunt's invention consists of two elements, or parts; first, of a collar, with reference to the materials out of which it is made, and their union, so as to secure certain qualities; and, second, of the subsequent manipulation of this collar, by which a smooth surface is given to it, and it is rendered impervious to moisture.

The defendant manufactures and sells shirt collars made of muslin or linen cloth pasted to a sheet of paper. Fundamentally they are the same with the collar described in Hunt's patent, because they are composed of muslin (or its equivalent) and paper so united as to utilize the same properties contemplated by Hunt in the union of the same elements. But it is sought to differentiate them for the reasons that the defendant attaches a sheet of paper to but one side of the cloth, and that the collar is turned down with the cloth surface only burnished and exposed to view.

The first reason rests upon an undue limitation of the scope of Hunt's invention. In his original patent, in explaining a mode of carrying his invention into practice, he describes a collar with paper on both sides of the cloth. Although he does not limit himself to any form of collar, yet the description is evidently applicable to the standing collars then in fashion, and the double coating of paper was suggested as best adapted to collars of that class. But, as has already been said, his invention was more comprehensive than this, and it was clearly indicated in his original specification. It is appriately claimed in the reissued patent in controversy, the unauthorized purpose of which was to protect it fully. Clearly, the terms of that claim are broad enough to embrace the collars made by the defendant; but, at any rate, I do not think a double coating of paper on one side of the cloth changes the identity of the fabric described by Hunt. It is still composed of the same constituents, so united as to embody the same properties which he first proposed to utilize, and the difference is only apparent and formal. Characteristic resemblance is the fairest test of substantial identity.

Now, is there any better foundation for discrimination in the fact that the defendant's collars are turned down and the cloth surface only is exposed to observation. Hunt's patent is not limited to any particular form of collar, and the polishing of the cloth surface pertains exclusively to the manipulation of the collar, after it is made, to fit it for use. It does not in any sense change the fundamental character of the fabric out of which it is formed, and, therefore, does not affect the applicability of the first claim of the reissue.

The defendant also manufactures collars entirely of paper, with patches of muslin pasted around the button-holes, to give additional strength at these points; and those are claimed to infringe the patent. I do not think so. Hunt did not contemplate any such restricted combination of paper and muslin. His collar was composed, throughout its whole body, of paper and muslin, and this was necessary to secure and embody the properties which he intended to make available. Nor could he successfully claim such a device. He did not invent paper collars, nor the application of cloth to button-holes to strengthen them. Such re-enforcements had been long before applied to button-holes, in leather curtains, sails and other fabrics. It was merely, therefore, the application of an old device to an analogous and well-known use, for which no one could obtain a patent.

The complainants are entitled to an injunction, to continue in force until the 25th day of July next, when the patent will expire, and to an account, and a decree will be entered accordingly